UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AISHAYA CAUL, individually and on behalf of all
others similarly situated,

                Plaintiff,

       -v-

PETCO ANIMAL SUPPLIES, INC. and PETCO
ANIMAL SUPPLIES STORES, INC.,

                Defendants.

Case No. 1:20-cv-03534-RPK-SJB

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Craig R. Benson
Paul R. Piccigallo
Kevin K. Yam
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022-3298
cbenson@littler.com
ppiccigallo@littler.com
kyam@littler.com
(212) 583-9600

TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   PLAINTIFF'S ALLEGATIONS ................................................................. 1

III.  STANDARD OF REVIEW ......................................................................... 3

IV.  ARGUMENT ............................................................................................... 4

      A.    Plaintiff Cannot State A Section 191 Frequency-Of-Pay Claim (Count 1) ........... 4

            1.    Title 6 Of The NYLL (Which Includes Section 191) Does Not Afford A Private Right Of Action For Untimely Paid Full Wages .......... 5

            2.    The Few Decisions Finding A Private Right Of Action To Exist Cannot Be Squared With The Language Of Title 6 Or Well-Established Principles Of Statutory Construction ..................................... 8

                  a.    Decisions Finding A Private Right Of Action Acknowledge That No Such Right Expressly Exists, But Have Concluded That Such A Right Can Be Implied From The Statutory Scheme .......................................................................................... 9

                  b.    Principles Of Statutory Construction Preclude Reading Into Sections 191 and 198 A Right Of Action That The Legislature Did Not Expressly Create .......................................... 9

                  c.    The Structure And History Of Title 6 Also Does Not Support Recognition Of A Private Right Of Action .................. 13

                  d.    Denying Recognition Of A Private Right Of Action Also Comports With The Rule Of Constitutional Avoidance ............. 16

      B.    Plaintiff Can Not State A Section 195(3) Wage Statement Claim (Count 2) ...... 18

V.   CONCLUSION ......................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arciello v. County of Nassau*,
  No. 16-cv-3974 (ADS)(SIL), 2019 WL 4575145 (E.D.N.Y. Sept. 20, 2019) ................... 6, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 3

*Belizaire v. RAV Investigative & Sec. Servs.*,
  61 F. Supp. 3d 336 (S.D.N.Y. 2014) .................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... 3

*Brown v. Netflix*,
  — F. Supp. 3d —, 2020 WL 2749571 (S.D.N.Y. May 27, 2020) ...................................... 3

*Carrier v. Salvation Army*,
  88 N.Y.2d 298, 644 N.Y.S.2d 678, 667 N.E.2d 328 (N.Y. 1996) .................................. 10

*Chan v. Big Geyser, Inc.*,
  No. 17-cv-6473, 2018 WL 4168967 (S.D.N.Y. Aug. 30, 2018) ................................... 7, 12

*Coley v. Vannguard Urban Improvement Ass'n*,
  No. 12-cv-5565, 2018 WL 1513628 (E.D.N.Y. Mar. 29, 2018) ........................................ 9

*Connecticut Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ......................................................................................................... 17

*Cruz v. TD Bank*,
  22 N.Y.3d 61, 979 N.Y.S.2d 257, 2 N.E.3d 221 (N.Y. 2013) .................................. 9, 10, 11

*de la Cruz v. Gill Corn Forms*,
  No. 03-cv-1133, 2005 WL 5419056 (S.D.N.Y. Jan. 25, 2005) .......................................... 2

*Elvey v. Silver's Crust West Indian Rest. & Grill*,
  No. 18-cv-126, 2019 WL 3937126 (E.D.N.Y. July 3, 2019) ........................................... 12

*Gardner v. D&D Elec. Constr. Co.*,
  No. 160249/2018, 2019 WL 3765345 (New York Sup. Ct. Aug. 9, 2019) ..................... 6, 19

*Haar v. Nationwide Mut. Fire Ins. Co.*,
  34 N.Y.3d 224, 115 N.Y.S.3d 197, 138 N.E.3d 1080 (N.Y. 2019) ............................. 10, 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Halebian v. Berv,*
  644 F.3d 122 (2d Cir. 2011)...................................................................3

*Hauff v. State Univ. of N.Y.,*
  425 F. Supp. 3d 116 (E.D.N.Y. 2019) ...................................................3

*Holmes v. Air Line Pilots Ass'n, Int'l.,*
  745 F. Supp. 2d 176 (E.D.N.Y. 2010) ...................................................3

*Hunter v. Planned Bldg. Servs.,*
  No. 715053/2017, 2018 WL 3392476 (Queens Sup. Ct. June 20, 2018) ...........................6, 19

*Hussain v. Pak. Int'l Airlines Corp.,*
  No. 11-cv-932 (ERK)(VVP), 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012) ...........6, 9, 11, 13

*Ikea U.S. v. Indus. Bd. of Appeals,*
  241 A.D.2d 454, 660 N.Y.S.2d 585 (2d Dep't 1997) ...........................................5, 11

*Kone v. Joy Constr. Corp.,*
  No. 15-cv-1328, 2016 WL 866349 (S.D.N.Y. Mar. 3, 2016).............................7, 12

*Konkur v. Utica Academy of Sci. Charter School,*
  181 A.D.3d 1271, 121 N.Y.S.3d 759 (4th Dep't 2020)......................................7, 12

*Kruty v. Max Finkelstein,*
  65 Misc.3d 1236, 119 N.Y.S.3d 831, 2019 WL 6910141 (Suffolk Sup. Ct.
  Dec. 12, 2019)...................................................................8

*Luna v. North Babylon Teacher's Org.,*
  11 F. Supp. 3d 396 (E.D.N.Y. 2014) ...................................................4

*Mark G. v. Sabol,*
  93 N.Y.2d 710 ...................................................................12

*McLean v. Garage Mgm't Corp.,*
  No. 10-cv-3950, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012) ...........................17

*Nielsen v. Rabin,*
  746 F.3d 58 (2d Cir. 2014)...................................................................3

*Olmsted v. Pruco Life Ins. Co. of New Jersey,*
  283 F.3d 429 (2d Cir. 2002)...................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Phillips v. Max Finkelstein, Inc.*,
   66 Misc.3d 514, 115 N.Y.S.3d 866 (Suffolk Sup. Ct. Dec. 12, 2019) ....................6, 8, 13, 19

*Reilly v. Natwest Mkts. Grp.*,
   181 F.3d 253 (2d. Cir. 1999)................................................................................17

*Scott v. Whole Foods Mkt. Grp.*,
   No. 18-cv-0086(SJF)(AKT), 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) .................. *passim*

*Sheehy v. Big Flats Cmty. Day*,
   73 N.Y.2d 629, 432 N.Y.S.2d 18, 541 N.E.2d 18 (N.Y. 1989) .............................10

*Sorto v. Diversified Maint. Sys.*,
   No. 20-cv-1302, — .............................................................................................9, 13

*Spokeo, Inc. v. Robins*,
   — U.S. —, 136 S. Ct. 1540 (2016).....................................................................17

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)...........................................................................................17

*U.S. v. Awadallah*,
   349 F.3d 42 (2d Cir. 2003)................................................................................16

*Uhr v. East Greenbush Cent. School. Dist.*,
   94 N.Y.2d 32, 698 N.Y.S.2d 609, 720 N.E.2d 886 (N.Y. 1999) .....................................11, 13

*Vega v. CM & Assocs. Constr. Mgmt.*,
   175 A.D.3d 1144, 107 N.Y.S.3d 286 (1st Dep't 2019) .........................................8

*Villager Pond, Inc. v. Town of Darien*,
   56 F.3d 375 (2d Cir. 1995)................................................................................3

**Statutes**

Child Welfare Reform Act of 1979 ........................................................................12

Education Law § 905(1)........................................................................................12

N.Y. Lab. Law § 190(4)........................................................................................4, 10

N.Y. Lab. Law § 190(7)........................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Statutes**

N.Y. LAB. LAW § 191 ......................................................................................... *passim*

N.Y. LAB. LAW § 191(1)(a)(i) ............................................................................. *passim*

N.Y. LAB. LAW § 191(1)(a)(ii) ..................................................................................16

N.Y. LAB. LAW §§ 191(1)(a)(ii), 196 ..........................................................................5

N.Y. LAB. LAW § 191(1)(d) ........................................................................................10

N.Y. LAB. LAW § 191(a) ....................................................................................1, 5, 19

N.Y. LAB. LAW § 191(a)(i)-(ii) ..................................................................................10

N.Y. LAB. LAW  § 195 ...................................................................................................1

N.Y. LAB. LAW § 195(3) ...................................................................................1, 18, 19

N.Y. LAB. LAW § 196 ..............................................................................11, 14, 15, 16

N.Y. LAB. LAW § 196-a ........................................................................................4, 11

N.Y. LAB. LAW § 197 ..................................................................................................11

N.Y. Lab. Law § 198(1–a) ............................................................................................8

N.Y. LAB. LAW § 198(1-a) ...............................................................................5, 6, 8, 9

N.Y. LAB. LAW § 198(1-b) .........................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................3

Defendant Petco Animal Supplies, Inc. and Petco Animal Supplies Stores, Inc. (collectively, "Petco") respectfully submit this memorandum of law in support of their motion to dismiss the claims made against them in this lawsuit.

## I.     PRELIMINARY STATEMENT

Plaintiff's two-count complaint should be dismissed.  Plaintiff's first cause of action alleges that Petco violated Section 191(1)(a)(i) of the New York Labor Law ("NYLL") by paying her on a bi-weekly instead of a weekly basis.  However, even if Plaintiff was a "manual worker" within the meaning of Section 191(1)(a) (a predicate for recovery and a proposition Petco vigorously disputes), her claim should be dismissed because no private right of action exists for her to bring a cause of action for the purported late payment of *full wages* under NYLL Sections 191 or 198. Plaintiff's second cause of action—for Petco's supposed failure to provide weekly hours-worked information in her bi-weekly wage statements—fails because NYLL Section 195(3) does not require wage statements to show "hours worked per week," but instead only the number of regular and overtime hours worked during the pay cycle, which here occurred on a bi-weekly basis.  As Exhibit A to Plaintiff's complaint demonstrates, Petco provided her with accurate and NYLL Section 195-compliant bi-weekly wage statements.  For these and the other reasons set forth below, the Court should dismiss Plaintiff's complaint in its entirety.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges she "was employed by Petco" as a "guest experience specialist" from October 12, 2018 to June 30, 2020, earning $15.00 per hour (*See* Declaration of Craig Benson, filed contemporaneously herewith, at Ex. A (Complaint (hereinafter, "Doc. 1") at ¶¶ 9, 36; Doc. 1-1 at 2).  Plaintiff does not claim that she was denied any pay by Petco, or that she was paid incorrect wages by Petco (Doc. 1 *passim*).  Instead, Plaintiff claims she was a "manual worker" within the meaning of NYLL Section 191(a), and therefore should have been paid on a weekly,

and not bi-weekly, basis (*Id.* at ¶¶ 3-6, 39-41). In other words, even though she concedes that she was paid in full for all of her hours worked, and claims no actual, personalized injuries, Plaintiff alleges she is entitled to recover liquidated damages *of up to half of her full pay for her entire tenure with Petco* simply because Petco paid her bi-weekly (*Id.* at ¶ 30; *see also id.* at ¶¶ 45-47).[1]

Plaintiff additionally claims that by providing her with bi-weekly wage statements showing only the number of hours she worked on a bi-weekly (as opposed to weekly) basis, Petco also violated Section 195 of the NYLL (Doc. 1 at ¶¶ 42-43, 49). Therefore, even though Plaintiff does not claim that Petco reported her hours incorrectly, she claims that by not breaking down her hours on a weekly basis, Petco is liable to her for "statutory penalties of two hundred fifty dollars for each workday that [Petco] failed to provide [her] with accurate wage statements, or a total of five thousand dollars" (*Id.* at ¶ 50). Plaintiff also seeks to recover in her complaint "[p]rejudgment and post-judgment interest," attorneys' fees and costs. (*Id.* at p. 8, ¶¶ (E)-(F)).

Plaintiff brings these claims not only on behalf of herself, but also on behalf of the following putative class of current and former New York employees:

> All persons who worked or have worked as Manual Workers for Petco Animal Supplies, Inc. and Petco Animal Supplies Stores, Inc. in New York between August 5, 2014 and the date of final judgment in this matter . . .

(Doc. 1 at ¶ 26).[2]

---

[1] NYLL § 191(1-a) provides that manual workers "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." Accordingly, even assuming arguendo that Plaintiff and the putative class members were "manual workers" (a position Petco vigorously contests) and that Plaintiff's theory has some merit (which it does not), Plaintiff could plausibly claim only that the wages for hours worked during the first week of each bi-weekly pay period were paid late, under a bi-weekly pay cycle program.

[2] The difficulties of applying this "cart-before-the-horse" class definition remained to be addressed another day, in the event the Court denies this motion to dismiss. At the present time, suffice it to say that Plaintiff's proposed fail safe class definition "is unworkable" as the "proposed class definition begs the very legal question at issue in this case"— which, if any, of Petco's hourly employees can be deemed "manual workers" within the meaning of NYLL Section 191(1)(a)(i). *de la Cruz v. Gill Corn Forms*, No. 03-cv-1133, 2005 WL 5419056, at *6 (S.D.N.Y. Jan. 25, 2005). By defining the putative class in terms of "a legal determination that has not yet been made" would render certification an "impossible to manage" task. *Id.*

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain allegations that "consist of more than mere labels, legal conclusions, or a 'formulaic recitation of the elements of a cause of action.'" *Holmes v. Air Line Pilots Ass'n, Int'l.*, 745 F. Supp. 2d 176, 192 (E.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. Therefore, to avoid dismissal, a plaintiff must support his claims with sufficient factual allegations suggesting "more than a sheer possibility that a defendant has acted unlawfully." *Hauff v. State Univ. of N.Y.*, 425 F. Supp. 3d 116, 126 (E.D.N.Y. 2019).

"The question on a motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Brown v. Netflix*, — F. Supp. 3d —, 2020 WL 2749571, at *2 (S.D.N.Y. May 27, 2020) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "The purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Id.* (quoting *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)). Accordingly, when ruling on a motion to dismiss, the court accepts all of a complaint's well-pleaded factual allegations as true and draws all reasonable inferences from them in the plaintiff's favor, while giving no "credit [to] conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see*

*also Luna v. North Babylon Teacher's Org.*, 11 F. Supp. 3d 396, 401 (E.D.N.Y. 2014) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (internal quotation marks omitted).

## IV.   ARGUMENT

### A.   Plaintiff Cannot State A Section 191 Frequency-Of-Pay Claim (Count 1)

Plaintiff claims she is a "manual worker" within the meaning of Section 191(1)(a)(i) of the NYLL, and therefore Petco violated Section 191 by paying her on a bi-weekly—as opposed to a weekly—basis (Doc. 1 at ¶¶ 6, 38-41, 45-46).  She does not claim to have suffered—and does not claim to seek—any actual damages (as none exist), but instead requests liquidated damages, attorneys' fees and costs, and prejudgment and post-judgment interest (*Id.* at ¶ 47).  But even assuming *arguendo* that Plaintiff was a "manual worker" (a proposition Petco strenuously disputes),[3] her claim fails because Section 191 does not provide a private right of action for employees who have no claim for unpaid wages.  In other words, where a plaintiff concedes all wages were paid, but were supposedly paid untimely, Section 191 affords no private right of action, and no basis for a recovery.[4]

---

[3] The NYLL defines a "manual worker" as a "mechanic, workingman or laborer."  N.Y. LAB. LAW § 190(4).  Under Section 191, "manual workers" are to be paid on a weekly basis. *Id.* at § 191(a).  On the other hand, Section 191 provides that "clerical and other workers" may be paid on a bi-weekly or semi-monthly basis. *Id.* at § 191(d).

[4] This, of course, is not to say that such an employee is without any remedy whatsoever.  As explained *infra*, the plaintiff, if properly deemed a manual worker, can seek recourse through the Commissioner of the New York Department of Labor.  N.Y. LAB. LAW § 196-a.  In response to employee wage complaints, the Commissioner is authorized to conduct investigations, and bring suit against employers who are found to have violated Title 6's provisions (Title 6 incorporates Section 191). *Id.* at § 196.  In such actions, the Commissioner is authorized not only to collect the wages due, but also recover civil penalties and liquidated damages. *Id.* at §§ 218-219.  As noted in Section IV.A.2 *infra*, this is precisely the sort of public function the Department of Labor has been providing to New York workers since the Great Depression.

4

1.    **Title 6 Of The NYLL (Which Includes Section 191) Does Not Afford A Private Right Of Action For Untimely Paid Full Wages**

Section 191 is codified within Section 6 of the NYLL, which vests exclusive responsibility for the enforcement of its provisions in the Commissioner of the Department of Labor *except in two limited circumstances*.  N.Y. LAB. LAW §§ 191(1)(a)(ii), 196; *see also Ikea U.S. v. Indus. Bd. of Appeals*, 241 A.D.2d 454, 455, 660 N.Y.S.2d 585, 586 (2d Dep't 1997) (affirming Labor Commissioner's administrative determination that employer violated the frequency-of-pay provisions of § 191(a) by paying manual workers on a bi-weekly basis).

The two exceptions where Title 6 specifically and expressly creates private rights of action are both contained in Section 198.  *First*, Section 198 provides:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount *of any underpayment*, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its ***underpayment of wages*** was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of ***the total amount of the wages found to be due*** . . . .

N.Y. LAB. LAW § 198(1-a) (emphasis added).  *Second*, Section 198 also provides that an employee may "recover in a civil action" statutory damages for her employer's failure to provide her with proper wage statements or a wage notice at the time of her hiring.  *Id.* at §§ 198(1-b), (1-d).  These are the only instances specified in the statute.  There are no others and certainly none with respect to frequency of payment.  Therefore, Section 198, by its own terms, does not provide a private remedy for the late payment of ***full*** wages, but only a private cause of action for the "underpayment of wages."  N.Y. LABOR LAW § 198(1-a).

Numerous courts—including this Court—have recognized that neither Section 198 nor Section 191 authorize an employee to bring a private right of action to recover damages and other relief because his employer paid him in full, but on a supposedly untimely bi-weekly basis.  *See,*

e.g., *Hussain v. Pak. Int'l Airlines Corp.*, No. 11-cv-932 (ERK)(VVP), 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) ("The NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment" under § 191(1)(a)(i) of the NYLL); *Hunter v. Planned Bldg. Servs.*, No. 715053/2017, 2018 WL 3392476, at *2 (Queens Sup. Ct. June 20, 2018) (same); *Phillips v. Max Finkelstein, Inc.*, 66 Misc.3d 514, 115 N.Y.S.3d 866, 869 (Suffolk Sup. Ct. Dec. 12, 2019) (no private right of action exists for mere frequency-of-pay § 191(1)(a)(i) violations).  For example, several courts, consistent with the plain wording of the statute, have held that Section 198's private right of action is limited to only successful claims for unpaid wages, not untimely paid full wages, and therefore a frequency-of-pay claim can only be brought if accompanied by allegations of unpaid wages. *See, e.g., Phillips*, 115 N.Y.S. 3d at 869 (the "actual payment of wages in full albeit on a bi-weekly basis where the law requires payment on a weekly basis does not constitute an 'underpayment' that would trigger an employee's right to commence a lawsuit to recover the damages set forth in" § 191 of the NYLL); *Gardner v. D&D Elec. Constr. Co.*, No. 160249/2018, 2019 WL 3765345, at *2 (New York Sup. Ct. Aug. 9, 2019) (a plaintiff "cannot bring an independent action to enforce the substantive provisions of" § 191 in cases where "he was paid in full prior to the commencement of this action"); *Hunter*, 2018 WL 3392476, at *2 (A "plaintiff has no private right of action under NYLL § 198(1-a) for a frequency of payment violation of NYLL § 191(1)(a)(i) where there is no claim for unpaid wages.").  Many of New York's federal courts have likewise concluded that Section 198 "seems to be geared to afford relief for unpaid wages, not for late paid wages." *Belizaire v. RAV Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 360 n.22 (S.D.N.Y. 2014); *see also, e.g., Arciello v. County of Nassau*, No. 16-cv-3974 (ADS)(SIL), 2019 WL 4575145, at *8 (E.D.N.Y. Sept. 20, 2019) (collecting cases, and

6

noting "[c]ourts in the Southern District of New York and this District have opined that the NYLL may not contain … a remedy for the failure to timely pay overtime wages").

Other courts, also relying on the specific wording of the statute, have similarly construed Section 198's private remedies narrowly, refusing to recognize private rights of action to enforce provisions of Title 6 not expressly listed within Section 198's terms.  For example, courts have held that there is no private of action (A) to enforce the wage "kick-back" prohibitions of Section 198-b; or (B) to remedy an employer's failure to provide notice of changes in employees' rates of pay as required by Section 195(2); or (C) for an employer's failure to maintain payroll records as required by Section 195(4); or (D) for an employer's failure to post its vacation, sick, and personal leave policies as required by Section 195(5).  *See, e.g.*, *Konkur v. Utica Academy of Sci. Charter School*, 181 A.D.3d 1271, 1272-73, 121 N.Y.S.3d 759, 760 (4th Dep't 2020), *Chan v. Big Geyser, Inc.*, No. 17-cv-6473, 2018 WL 4168967, at *7-10 (S.D.N.Y. Aug. 30, 2018); *Kone v. Joy Constr. Corp.*, No. 15-cv-1328, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016).  Recognizing that the New York Legislature amended Section 198 as late as 2010 to "add[] explicit private rights of action for certain claims . . . but not others," these courts have refused to imply the existence of private rights of action that the Legislature "clearly knew how to" create but chose not to do so. *Chan*, 2018 WL 4168967, at *6; *accord Konkur*, 181 A.D.3d at 760, 121 N.Y.S.3d at 1272 (refusing to recognize implied private rights of action within Section 198 and Title 6 generally given that "the legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself").  *See also, e.g.*, 2010 Sess. Law News of N.Y. Ch. 564 (S. 8380) (eff. Apr. 9, 2011).

Here, Plaintiff does not claim that Petco "underpaid" her the full wages she was due. Instead, Plaintiff claims those wages were paid late, on a bi-weekly basis, instead of weekly.  But

without a claim for any actually unpaid wages, Plaintiff has no private right of action under the plain and express terms of Sections 191 or 198.

> ### 2. The Few Decisions Finding A Private Right Of Action To Exist Cannot Be Squared With The Language Of Title 6 Or Well-Established Principles Of Statutory Construction

In response, Plaintiff will likely claim that case law concerning the availability of a private right of action to pursue frequency-of-pay claims is not uniform.  For example, New York state trial and intermediate appellate courts are divided on whether to recognize a private right of action for frequency-of-pay violations, even where it is clear that all wages due have been paid.  *Compare, e.g.*, *Vega v. CM & Assocs. Constr. Mgmt.*, 175 A.D.3d 1144, 1146, 107 N.Y.S.3d 286, 288 (1st Dep't 2019) ("Labor Law § 198(1–a) expressly provides a private right of action for a violation of Labor Law § 191," even if "there are no wages for the employee to recover") *with Phillips*, 115 N.Y.S.3d at 869-70 (noting "this court is not bound to follow the rule of law enunciated in *Vega*," and concluding "that actual payment of wages in full albeit on a bi-weekly basis where the law requires payment on a weekly basis does not constitute an 'underpayment' that would trigger an employee's right to commence a lawsuit" under § 198) and *Kruty v. Max Finkelstein,* 65 Misc.3d 1236, 119 N.Y.S.3d 831 (Table), 2019 WL 6910141, at *2 (Suffolk Sup. Ct. Dec. 12, 2019) (concluding that *Vega*'s determination regarding the existence of a private right of action for frequency-of-payment claims even where full wages have been paid conflicts with the implied holding of the Appellate Division, Second Department's decision in *Ikea US*, that frequency-of-payment claims unaccompanied by proof of unpaid wages do not constitute "underpayments" within the meaning of NYLL § 198(1-a)).  This intra-state court division on the issue has produced conflicting opinions by this Court as well.  *Compare, e.g.*, *Scott v. Whole Foods Mkt. Grp.*, No. 18-cv-0086(SJF)(AKT), 2019 WL 1559424, at *2-4 (E.D.N.Y. Apr. 9, 2019) (concluding that a private right of action exists to enforce frequency-of-pay claims under § 191, even if all wages due

have been paid) *with Hussain*, 2012 WL 5289541, at *3 (noting that "recovery in this case hinges on [the] unpaid wages claim under the damages provisions of NYLL § 198(1-a)" because "[t]he NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment") *and Coley v. Vannguard Urban Improvement Ass'n*, No. 12-cv-5565, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 29, 2018) (recognizing that §§ 191 and 198 provide a private right of action only "for unpaid wages, not for late paid wages").

a. **Decisions Finding A Private Right Of Action Acknowledge That No Such Right Expressly Exists, But Have Concluded That Such A Right Can Be Implied From The Statutory Scheme**

Typically, courts that have somehow found that a private right of action exists for frequency-of-pay claims unaccompanied by proof of unpaid (as opposed to untimely-paid) wages reason that although Sections 191 and 198 may not expressly provide for such a right of action, such a right can be implied from the statutory scheme. *See Scott*, 2019 WL 1559424, at *3 ("Even if § 191 does not expressly authorize a private action one may be implied …"); *Sorto v. Diversified Maint. Sys.*, No. 20-cv-1302, — WL —, 2020 U.S. Dist. LEXIS 216328, at *3-6 (E.D.N.Y. Nov. 15, 2020) (concluding that a private right of action can be implied under § 191, "even if the statute may not fairly be read to expressly provide one").

b. **Principles Of Statutory Construction Preclude Reading Into Sections 191 and 198 A Right Of Action That The Legislature Did Not Expressly Create**

Well-established principles of statutory construction preclude creating a right of private action for claims concerning untimely paid full wages by judicial implication. A private right of action may only be found "if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Cruz v. TD Bank*, 22 N.Y.3d 61, 70, 979 N.Y.S.2d 257, 262, 2 N.E.3d 221, 226 (N.Y. 2013). This requires consideration of "(1) whether

the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; *and* (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big Flats Cmty. Day*, 73 N.Y.2d 629, 432 N.Y.S.2d 18, 20, 541 N.E.2d 18, 20 (N.Y. 1989) (emphasis added). "Critically, all three factors must be satisfied before an implied private right of action will be recognized." *Haar v. Nationwide Mut. Fire Ins. Co.*, 34 N.Y.3d 224, 229, 115 N.Y.S.3d 197, 200, 138 N.E.3d 1080, 1084 (N.Y. 2019). The third factor is the "most critical," *Carrier v. Salvation Army*, 88 N.Y.2d 298, 302, 644 N.Y.S.2d 678, 681, 667 N.E.2d 328, 329 (N.Y. 1996), because a private right of action will not be inferred "where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself." *Cruz*, 22 N.Y.3d at 71, N.Y.S.2d at 262, 2 N.E.3d at 227 (partial quotation omitted). *Accord Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 433 (2d Cir. 2002) (the "explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional").

Here, given the clear absence of language providing for a private right of action, it cannot be "fairly implied" into either Section 191 or 198 for frequency-of-pay claims unaccompanied by proof of unpaid wages. This is because the second and third factors cannot be met based on the clear structure and language of both statutes.[5] Section 191 contemplates that the Labor Commissioner would police violations of its frequency-of-payment provisions. N.Y. LAB. LAW §

---

[5] Petco also disputes the presence of the first factor—that Plaintiff was a "manual worker" within the meaning of Section 191(1)(a)(i). As explained in note 3 *supra,* the NYLL § 190(4) defines a "manual worker" as a "mechanic, workingman or laborer." Plaintiff's position as a Guest Experience Specialist fits none of those categories. Under NYLL § 190(7), employees who do not qualify as "manual workers," "railroad workers," or "commission salesman" are deemed "clerical and other workers," who may permissibly be paid under NYLL § 191(1)(d) on a bi-weekly or semi-monthly basis. However, as this is a fact-based issue, it is appropriately reserved for later proceedings (should they prove necessary in this case).

191(a)(i)-(ii); *see also Ikea US*, 241 A.D.2d at 455, 660 N.Y.S.2d at 586.  Section 196 expands on the powers of the Labor Commissioner to enforce the terms of Section 191, including by, *inter alia*, affording the Labor Commissioner with the power to investigate frequency-of-pay violations, to sue employers on frequency-of-pay claims that employees assign to the Labor Commissioner, and to demand a bond from employers who have been found to have violated Section 191's provisions. N.Y. LAB. LAW § 196.  Section 196-a establishes a procedure for aggrieved employees to file complaints with the Labor Commissioner for investigation, including over late paid wages. N.Y. LAB. LAW § 196-a.  Sections 197, 218 and 219 establish civil penalties for violations of Section 191, which can only be recovered by the Labor Commission "in any legal action necessary, including administrative action or a civil action."  N.Y. LAB. LAW § 197; *accord id.* at §§ 218-219. And Section 198 authorizes remedies through a civil suit for proven claims of unpaid wages, but not for full wages untimely paid. *Hussain*, 2012 WL 5289541, at *3.

Thus, in adopting Section 6 of the NYLL, which incorporates Sections 190 through 198, the Legislature created a carefully crafted administrative mechanism for enforcement of Section 191 violations that incorporates a process for aggrieved employees to file administrative complaints and for the Labor Commissioner to pursue legal action against their employers to address the employees' concerns.  It very easily could have provided for a private right of action as well.  It did not.  Accordingly, no broader private remedy can be read into Sections 191 or 198 other than that explicitly provided for in Section 198 itself.  *See Cruz*, 22 N.Y.3d at 71, N.Y.S.2d at 262, 2 N.E.3d at 227 (no private right of action can be inferred "where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself."); *see also Uhr v. East Greenbush Cent. School. Dist.*, 94 N.Y.2d 32, 40-42, 698 N.Y.S.2d 609, 613-14, 720 N.E.2d 886, 890 (N.Y. 1999) (declining to infer existence of a private right of action to

enforce Education Law § 905(1) because the Legislature created a statutory scheme for administrative enforcement of its provisions); *Mark G. v. Sabol*, 93 N.Y.2d 710, 720-21; 695 N.Y.S.2d 730, 733-34, 717 N.E.2d 1067, 1071-72 (N.Y. 1999) (same, with respect to provisions of the Child Welfare Reform Act of 1979).

As noted *supra*, numerous state and federal courts applying these well-established standards have refused to recognize implied private rights of action to enforce provisions of Title 6 not expressly listed within Section 198's terms, particularly in light of the fact that the New York Legislature amended Section 198 as late as 2010 to recognize private rights of action for some, but not all, violations of Title 6's provisions. *Konkur*, 181 A.D.3d at 1272-73, 121 N.Y.S.3d at 760 (4th Dep't 2020); *Chan*, 2018 WL 4168967, at *7-10; *Kone*, 2016 WL 866349, at *5.  To sanction an implied private right of action in the circumstances of this case would undermine the Legislature's carefully crafted enforcement scheme by allowing employees to avoid the administrative complaint process entirely and usurp the Labor Commissioner's investigative and enforcement authority through direct private action, all while having suffered no actual damages—*i.e.*, no underpayment of wages.. While the Court in *Scott v. Whole Foods Group, Inc.* sought to downplay this risk because of the discretionary, and not mandatory, nature of the Commissioner's investigative and enforcement authority, *see* 2019 WL 1559424, at *4, such a notion was implicitly rejected by the courts in *Konkur*, *Chan* and *Kone*, where implied private rights of action to enforce other provisions of Title 6 were rejected even though those provisions were subject to the same sort of discretionary enforcement authority.  In other words, recognizing an implied right of private action under Section 191 for claims of untimely paid full wages cannot be squared with decisions by this Court and other courts refusing to recognize implied rights of action to enforce other provisions of Title 6 ***not expressly listed in Section 198's terms***.  *See, e.g.*, *Elvey v. Silver's Crust*

12

*West Indian Rest. & Grill*, No. 18-cv-126, 2019 WL 3937126, at *13 (E.D.N.Y. July 3, 2019) (dismissing claim to enforce § 195(1)'s annual wage notice requirement because "[c]ourts have read the plain language of NYLL § 198(1-b) to confer a private right of action only for time-of-hire wage notice violations, not for violations of the erstwhile annual wage notice requirement.").

Accordingly, and with all due respect to District Judge Sandra J. Feuerstein and Magistrate Judge Steven I. Locke, the Court's recent decisions in *Scott* and *Sorto* represent not only an unwarranted departure from the Court's prior position in *Arciello* and *Hussain* that no private right of action exists under Section 191 for claims concerning the untimely payment of full wages, but also a departure from the Court's wider jurisprudence concluding that the only private rights of action that exist to enforce Title 6's terms are those expressly set forth within Section 198's terms.

### c.     The Structure And History Of Title 6 Also Does Not Support Recognition Of A Private Right Of Action

The text and legislative history of Sections 191 and 198 also do not support the existence of a private right of action to enforce frequency-of-pay claims with no underpayment of wages. *Uhr*, 94 N.Y.2d at 42, 698 N.Y.S2d at 614, 720 N.E.2d at 1087 ("to imply" a private right of action, a court "must have clear evidence of the Legislature's willingness to expose the [party] to liability that it might not otherwise incur"); *Haar*, 34 N.Y.3d at 233, 115 N.Y.S.3d at 1087, 138 N.E.3d at 203 ("the statutory text and legislative history do not imply a legislative intent to create a right of action under [Public Health Law §] 230(11)(b)").  Neither Sections 191 nor 198, or Title 6 of the NYLL generally, states or implies that delay in payment alone constitutes damages *per se*, such that a plaintiff may recover liquidated damages, pre-judgment and post-judgment interests, attorneys' fees and costs, all through private civil litigation.  To the contrary, the legislative history surrounding Section 191 demonstrates that both the Legislature and Department of Labor viewed Section 191 as the source of the Department's authority to aid various categories of workers in the

13

recovery of wages through Title 6's administrative process, and not as a source of additional actionable private rights beyond those expressly set forth in Section 198.

Section 191 was previously codified as Section 196 of the Labor Law of 1909. In 1935, an amendment to Section 196 was introduced at the Department of Labor's request. As explained in the supporting statement, the amendment was designed to extend application of Section 196's wage protections to all forms of business, and not just to corporations and joint-stock associations, and thereby address the problem at the time of individuals forming unincorporated or partnership entities "to perform one or two contracts, defer the payments of wages to their employees for prolonged periods and then shut up shop and disappear" entirely. *See* Benson Decl. at Ex. B (Bill Jacket 1935 Ch. 619 at p. 5).[6]  In a memorandum to the Governor, New York's Industrial Commissioner explained that the amendment was "imperative," because the Department of Labor otherwise lacked statutory authority to aid employees making "wage collection complaints involv[ing] the individual or copartnership type of employer" (*Id.* at Ex. B, p. 10). There is no mention whatsoever about a potential private right to recovery.

The Legislature revisited Section 196 in 1956, again at the Department of Labor's request. The supporting statement explained the purpose of the amendment was to "permit the Department of Labor to assist typists, stenographers, clerks, and other office workers in the collection of their unpaid wages in the same manner that the Department assists manual workers." *See* Benson Decl. at Ex. C (Bill Jacket 1956 Ch. 539 at p. 5). In a memorandum to the Governor dated March 28,

---

[6] Historical Bill Jackets are maintained by the New York State Library, and are made publicly available (and judicially noticeable) on its website at https://nysl.ptfs.com/knowvation/app/consolidatedSearch/#search/v=list,c=1,q=qs%3D%5B*%5D%2Cfacet-fields%3D%5Bbrowse1_ss%3A%22All%20Government%20Collections%22%3E%3Ebrowse2_ss%3A%22New%20York%20State%20Legislative%20Bill%20Jackets%22%3E%3Ebrowse3_ss%3A%7Bempty%7D%3E%3Ebrowse4_ss%3A%7Bempty%7D%3E%3Ebrowse5_ss%3A%7Bempty%7D%3E%3Ebrowse6_ss%3A%7Bempty%7D%3E%3Ebrowse7_ss%3A%7Bempty%7D%3E%3Ebrowse8_ss%3A%7Bempty%7D%3E%3Ebrowse9_ss%3A%7Bempty%7D%3E%3Ebrowse10_ss%3A%7Bempty%7D%3E%3Efacet-fields-limit%3A100%5D%2CqueryType%3D%5B16%5D,sm=s,l=library1_lib

14

1956, New York's Solicitor General explained that the amendment would "bring[] within the provisions of the Labor Law, as they relate to the requirement for payment of wages and salaries, persons other than mechanics, workingmen, laborers and commission salesmen" (*Id.* at Ex C., p. 13).   And in a memorandum to the Governor, New York's Industrial Commissioner explained that "[u]nder present law, the Department of Labor's authorization to assist in the collection of unpaid wages is limited to 'employees' within the meaning of the Labor Law, that is, to mechanics, laborers or workingmen.  This bill would extend the Department's authority to wage claims of all employed individuals" (*Id.* at Ex. C., p. 22).  Once again, the history is clear that the focus is on the Department of Labor with no mention whatsoever of a private right to recovery.

The Department of Labor again encouraged the Legislature to amend Section 196 in 1966, this time to expand the Department's authority to cover wage complaints submitted by domestic workers and non-profit employees.  *See* Benson Decl. at Ex. D (Bill Jacket 1966 Ch. 989).  In a memorandum to the Governor dated March 17, 1966, the Senate's Chairman of the Committee on Labor and Industry explained:

> One of the major functions of the Labor Department is the assistance it provides to employees in collecting unpaid wages due them.  In 1964, for example, the Department collective nearly half a million dollars for over 7,000 workers.  There remain, however, two large groups of employees whose claims cannot be processed by the Department under the law as it is presently written—persons employed as domestics, and employees in non-profitmaking institutions.
>
> * * * *
>
> The bill is not designed to enable the Industrial Commissioner to invade the privacy of private homes and inspect for wage violations.  It is intended only to permit the Industrial Commissioner to assist domestic workers when they file complaints with the Department of Labor that they have not received their wages.

(*Id.* at Ex. D, pp. 9-10).  Yet again, there is no mention of a private right of action.

15

As the foregoing makes clear, the legislative history surrounding such amendments to Section 191 (and its predecessor, Section 196) reveals that both the Legislature and the Department of Labor have historically viewed Section 191 as the source of the Department's authority to aid various categories of workers in the recovery of wages through the Department's Title 6 administrative powers, and not as a source of privately actionable rights.

Additionally, Section 191(1)(a)'s requirement for the payment of manual workers on a weekly basis is waivable. *See* N.Y. LAB. LAW § 191(1)(a)(ii).  The Commissioner of Labor may waive an employer's obligation to pay manual workers on a weekly basis, and pay them on a bi-weekly or semi-monthly basis as clerical and other "white collar" workers, on receipt of proof of the employer's "continuing ability to meet its payroll obligations." *Id.*  This view of Section 191(1)(a)'s frequency-of-pay requirements as being procedural, and not substantive, in nature is consistent with the Legislative commentary on Section 191 dating back to 1935—that the purpose of Section 191 is not to ensure that payments are made weekly versus on some other schedule, but instead to ensure that employers make payroll payments at all.  Implying a private right of action under the facts of this case—where full wages were not only paid, but paid on a bi-weekly schedule permissible for clerical and other workers—would not promote the protection of workers, would not further the legislative purpose of Section 191, and would otherwise interfere with the enforcement mechanism created by the New York Legislature.

### d.     Denying Recognition Of A Private Right Of Action Also Comports With The Rule Of Constitutional Avoidance

It is axiomatic that courts should construe a statute "to avoid constitutional problems if a viable alternative interpretation exists." *U.S. v. Awadallah*, 349 F.3d 42, 55 (2d Cir. 2003).  Here, a "plain reading" application of Sections 191 and 198 not only belies the notion that any private right of action exists for frequency-of-pay claims unaccompanied by proof of unpaid wages, but

also avoids the Constitutional concerns that would arise if a private right of action was to be inferred from Title 6's otherwise silent terms. *See, e.g.*, *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citations and internal quotation marks omitted).  The Supreme Court has made clear that "Article III standing requires a concrete injury even in the context of a statutory violation," such that a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy [Article III's] injury-in-fact requirement." *Spokeo, Inc. v. Robins*, — U.S. —, 136 S. Ct. 1540, 1549 (2016).  Any attempt to read into Sections 191 and 198 the existence of a private right of action for frequency-of-pay claims unaccompanied by claims of unpaid wages and actual injury would raise such serious Article III concerns, as standing exists only for statutory violations accompanied by proof of "some concrete interest that [wa]s affected by" that violation.  *Id*. (quoting *Summers v. Earth Island Inst*., 555 U.S. 488, 496 (2009)).  This is particularly true where, as here, the liquidated damages sought by Plaintiff under Section 198 are considered purely as a penalty, and not as a form of compensation, *McLean v. Garage Mgm't Corp*., No. 10-cv-3950, 2012 WL 1358739, at *10 (S.D.N.Y. Apr. 19, 2012), and only then as a means "to deter an employer's willful withholding of wages due." *Reilly v. Natwest Mkts. Grp*., 181 F.3d 253, 265 (2d. Cir. 1999).  Here no wages were withheld—Plaintiff does not deny that she was fully paid the wages she was due, albeit on a bi-weekly schedule.  At bottom, Plaintiff seeks a statutory penalty based on Petco's supposed violation of Section 191 for which Plaintiff claims no personal, concrete injury—a scenario for which there can be no Article III standing. *Compare, e.g.*, *Spokeo*, 136 S. Ct. at 1549 (a plaintiff may not "allege a bare procedural violation, divorced from any concrete

harm, and satisfy [Article III's] injury-in-fact requirement") *with Scott*, 2019 WL 1559424, at \*4 (concluding that Section 191 "requires no additional evidence of actual damages beyond that delay" in wage payment, "and an inquiry into 'actual' damages is not made in cases involving violations of § 191").

Accordingly, Count One fails to state a claim upon which relief can be granted.

### B.     Plaintiff Can Not State A Section 195(3) Wage Statement Claim (Count 2)

Plaintiff's wage statement claim is equally unavailing.  She wrongly claims her wage statements are inaccurate because they were provided bi-weekly, not weekly, and therefore failed to "specify[] the number of hours she worked *per week*."  (Doc. 1 at ¶ 42 (emphasis added).

It is undisputed that Petco provided Plaintiff with wage statements on a bi-weekly basis, with her bi-weekly pay, and that those wage statements informed her of her reported regular and overtime hours for that bi-weekly period.  (*See, e.g.*, Doc. 1-1).  It is also undisputed that her wage statements contained all the information required by Section 195(3) of the NYLL, including (1) the dates the payment of wages covers; (2) the name of both the employer and employee; (3) Petco's contract information; (4) the rate and basis of Plaintiff's pay; (5) her gross wages; (6) deductions; (7) allowances (where applicable); and (8) net wages.  *See* NYLL § 195(3).  Plaintiff does not claim that her wage statements misreported her regular and overtime hours in any way— she instead manufactures a claim alleging that those wage statements should have broken out her regular and overtime hours on a week-by-week basis, even though that is not a requirement under the law.  (Doc. 1 *passim*).

Section 195(3) does not require that wage statements be furnished on a weekly basis, or provide a breakdown of the "hours . . . worked per week" by an employee.  (Doc. 1 at ¶ 42).  Although Plaintiff claims she should have been paid weekly as a supposed "manual worker," courts have consistently found that Section 195(3) only requires that wage statements be provided

18

when wage payments *are actually made*, which here occurred on a bi-weekly basis.  *See Hunter*, 2018 WL 3392476, at *4 (in dismissing Section 195(3) claim, noting that while plaintiff claimed the defendant should have paid him weekly, instead of bi-weekly, and thus also "failed to provide wage statement[s] on a weekly basis, the statute only requires that wage statements be furnished to employees with every payment of wages," which in the case occurred bi-weekly); *Phillips*, 66 Misc.3d at 519, 115 N.Y.S.3d at 870, (dismissing Section 195(3) claims because allegations that wage statements were to be provided weekly, and not bi-weekly, due to the frequency-of-pay requirements of Section 191(a) was not supported by a plain reading of Section 195(3): "[t]here is no frequency requirement set forth in the statute," and therefore "there is no requirement that the wage information be provided weekly"); *Gardner*, 2019 WL 3765345, at *4 (despite plaintiffs' claims that they should have been paid on a weekly, not bi-weekly, basis, and received wage statements weekly showing their hours each week, dismissing their Section 195(3) claim because the defendant's bi-weekly wage statements "contain[ed] all of the statutorily-required information").  The NYLL only requires wage statements to contain "the number of regular hours worked, and the number of overtime hours worked," NYLL § 195(3), which Petco included in every bi-weekly wage statement.  (*See, e.g.*, Doc. 1-1).  Accordingly, Count Two of Plaintiff's complaint is due to be dismissed.

## V.      CONCLUSION

For the reasons set forth above, Petco respectfully requests that the Court dismiss Plaintiff's complaint with prejudice, and award such other or further relief as the Court deems just and proper.

Dated: November 23, 2020
      New York, New York

*/s/ Craig R. Benson*
Craig R. Benson
Paul R. Piccigallo
Kevin K. Yam
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
cbenson@littler.com
ppiccigallo@littler.com
kyam@littler.com
(212) 583-9600

*Attorneys for Defendants Petco Animal Supplies, Inc. and Petco Animal Supplies Stores, Inc.*