UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
AISHAYA CAUL,

                Plaintiff,                      **MEMORANDUM AND ORDER**

         v.                                      20-CV-3534 (RPK) (SJB)

PETCO ANIMAL SUPPLIES, INC., and PETCO
ANIMAL SUPPLIES STORES, INC.,

                Defendants.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       In a class action complaint, Aishaya Caul sues Petco Animal Supplies, Inc., and Petco Animal Supplies Stores, Inc., under New York Labor Law ("NYLL"). Plaintiff alleges that defendants were required to pay manual workers weekly, but instead paid her and other manual workers every two weeks. Plaintiff further alleges that NYLL required defendants to provide manual workers with wage statements showing their weekly hours and that defendants failed to do so. Defendants move to dismiss for failure to state a claim. Because the complaint states a claim for untimely payments but not for improper wage statements, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

       The following facts are drawn from the complaint and documents attached as exhibits. The allegations in the complaint are "accept[ed] as true" on a motion to dismiss. *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

       Between October 12, 2018 and June 30, 2020, plaintiff Aishaya Caul was employed by defendants as a guest-experience specialist. Compl. ¶ 36 (Dkt. #1). In that position, plaintiff

1

spent at least a quarter of her time performing manual labor, including stocking shelves, cleaning floors, and helping customers carry and bag items. *Id.* ¶¶ 38-39. Plaintiff alleges that defendants paid her on a "bi-weekly basis," meaning every two weeks for two weeks of work. *Id.* ¶¶ 39-40. Plaintiff has attached a representative wage statement to her complaint. *See* Compl. Ex. A (Dkt. #1-1).

Plaintiff filed her class-action complaint on August 5, 2020. The first cause of action alleges that defendants filed to pay timely wages in violation of N.Y. Lab. L. § 191(1)(a) because they paid plaintiff on a biweekly basis. *See* Compl. ¶¶ 44-47. Plaintiff seeks liquidated damages as well as reasonable attorneys' fees, costs, pre-judgment interest, and post-judgment interest. *Id.* ¶ 47. The second cause of action alleges that defendants failed to provide accurate wage statements in violation of N.Y. Lab. L. § 195(3). *See* Compl. ¶¶ 48-50. Specifically, plaintiff alleges that defendants did not provide wage statements that showed the hours that she worked per week. *See id.* ¶ 42. Plaintiff seeks statutory penalties of $250 for each workday where defendants failed to provide accurate wage statements as well as reasonable attorneys' fees and costs. *Id.* ¶ 50.

Defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mem. in Supp. of Mot. to Dismiss at 3 (Dkt. # 16-1) ("Defs.' Mem."). As to plaintiff's claim for untimely wages under Section 191(1)(a), defendants do not dispute that, at least once, plaintiff was paid more than seven calendar days after the end of the week in which her wages were earned. And although defendants "strenuously dispute[]" that plaintiff was a "manual worker," they do not move to dismiss the complaint on that basis. Defs.' Mem. at 4, 10 n.5. Instead, defendants argue that a worker has no cause of action under Section 191 when the employer paid the worker's wages in full but late. Defs.' Mem. at 5. As to

plaintiff's claim regarding wage statements, defendants argue that Section 195(3) does not require such statements to specify hours worked on a weekly basis. Defs.' Mem. at 18-19.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Defendants' motion to dismiss is granted in part. Plaintiff has stated a claim for untimely wages under Section 191 of the New York Labor Law but not for improper wage statements under Section 195 of that statute.

**I.** **Plaintiff has stated a claim for untimely wages under Section 191.**

Plaintiff has stated a claim that defendants violated Section 191 of the New York Labor Law. Section 191(1)(a) states that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned" unless the Commissioner of the New York Department of Labor has "authorized" the employer to pay the worker less frequently. N.Y. Lab. L. § 191(1)(a). Section 198(1-a) of the New York Labor Law permits an "employee to recover the full amount of any underpayment" of wages. *Id.* § 198(1-a). In addition, "unless the employer proves a good faith basis to believe that its underpayment of

3

wages was in compliance with the law," the employee may also recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." *Ibid.*

Section 191 permits a manual worker to bring a civil action for delayed payment of wages—even if the wages have subsequently been paid. "When deciding a question of state law" like this one, a federal court "look[s] to the state's decisional law, as well as to its constitution and statutes." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (citation omitted). Absent a clear directive from a state's highest court, a federal court must "predict how the state's highest court would resolve the uncertainty or ambiguity." *Id.* at 499 (citation omitted). In doing so, the federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).

Here, a state intermediate court—the Appellate Division's First Department—has held that New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages, even if wages are no longer past due. *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (N.Y. App. Div. 2019). The First Department reasoned that "[Section] 198(1-a) expressly provides a private right of action for a violation of [Section] 191." *Id.* at 1146. It further concluded that Section 198(1-a) allows an award of damages based on untimely payments even if the employer had "pa[id] the wages that [we]re due before the commencement of [the] action." *Id.* at 1145. The court reasoned that an "underpayment" for purposes of Section 198(1-a) occurs "[t]he moment that an employer fail[s] to pay wages in compliance with [S]ection 191(1)(a)." *Ibid.* While an employer who eventually pays the underpaid wages can "assert an affirmative defense" based on the eventual payment, the First Department concluded

4

that an employee could still seek "statutory remedies," including liquidated damages. *Ibid.* The appellate court found instructive the Supreme Court's conclusion in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). That Supreme Court decision interpreted a similarly worded provision in the Fair Labor Standards Act of 1938 ("FLSA") to allow an employee to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action." *Vega*, 175 A.D.3d. at 1145-46.

Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law, *see, e.g., Mabe v. Wal-Mart Assocs., Inc.*, No. 1:20-cv-00591, 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18, 2021); *Sorto v. Diversified Maint. Sys., LLC*, No. 20-CV-1302(JS)(SIL), 2020 WL 7693108, at *2-3 (E.D.N.Y. Dec. 28, 2020); *Duverny v. Hercules Medical P.C.*, No. 18cv07652 (DLC), 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020); *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-CV-0086 (SJF) (AKT), 2020 WL 9814095, at *3 (E.D.N.Y. Feb. 5, 2020).

Defendants present no persuasive reason to do otherwise. Defendants seek to relitigate *Vega*'s conclusion that an employer's late payment of full wages is an underpayment within the terms of Section 198(1-a). Defs.' Mem. at 5-6. But defendants rely almost exclusively on pre-*Vega* cases. *See Hussain v. Pak. Int'l Airlines Corp.*, No. 11-cv-932 (ERK)(VVP), 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012); *Hunter v. Planned Bldg. Servs., Inc.*, No. 715053/2017, 2018 WL 3392476, at *2 (N.Y. Sup. Ct. June 20, 2018); *Gardner v. D&D Elec. Constr. Co.*, No. 160249/2018, 2019 WL 3765345, at *2 (N.Y. Sup. Ct. Aug. 9, 2019); *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 360 n.22 (S.D.N.Y. 2014); *Chan v. Big Geyser, Inc.*, No. 1:17-CV-06473 (ALC), 2018 WL 4168967 (S.D.N.Y. Aug. 30, 2018); *Kone v. Joy Constr. Corp.*, No. 15CV1328-LTS, 2016 WL 866349 (S.D.N.Y. Mar. 3, 2016);

*Coley v. Vanguard Urb. Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018); *cf. Arciello v. County of Nassau*, No. 2:16-cv-3974 (ADS) (SIL), 2019 WL 4575145, at *8 (E.D.N.Y. Sept. 20, 2019) (failing to note *Vega* ten days after the decision issued and instead relying on pre-*Vega* cases). Defendants also rely on inapposite cases that declined to imply private rights of action from other parts of the statute. *See Chan*, 2018 WL 4168967, at *7-10; *Kone*, 2016 WL 866349, at *5; *Konkur v. Utica Acad. of Sci. Charter Sch.*, 181 A.D.3d 1271, 1272-73 (N.Y. App. Div. 2020) ("[W]e offer no opinion with respect to whether other provisions within article 6 of [NYLL] [other than Section 198-b] afford private rights of action.").

While defendants suggest that New York State trial and intermediate appellate courts remain divided even after *Vega*, Defs.' Mem. at 8, defendants point only to a pair of Suffolk County Court cases. *See Phillips v. Max Finkelstein, Inc.*, 66 Misc. 3d 514, 516-19 (N.Y. Cnty. Ct. 2019); *Kruty v. Max Finkelstein, Inc.*, No. 616616-2017, 2019 WL 6910141, at *2-3 (N.Y. Cnty. Ct. Dec. 12, 2019). Those cases are unpersuasive. The courts there reasoned that they were not bound to follow *Vega* because the Appellate Division's Second Department had taken a contrary approach. But the Second Department decision in question—*IKEA U.S. Inc. v. Indus. Bd. Of Appeals*, 241 A.D.2d 454 (N.Y. App. Div. 1997)—simply assessed whether the state Commissioner of Labor had proffered substantial evidence that a particular employer violated Section 191. *Id.* at 455. It did not controvert the explicit holding of *Vega*.

Defendants also suggest that *Vega* is incorrect because New York law does not allow a private right of action for late payment of full wages to be implied in Sections 191 or 198. Defs.' Mem. at 9-16. In New York, a private right of action may be implied where the "plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right

6

of action would promote the legislative purpose of the statute[,] and the creation of such a right would be consistent with the legislative scheme." *Vega*, 175 A.D.3d at 1146. Defendants contend that the statute already provides an administrative mechanism to enforce Section 191 violations, the legislative history reflects the administrative nature of the Section 191 scheme, and the purpose of Section 191 is "to ensure that employers make payroll payments at all." Defs.' Mem. at 10-16. But *Vega* addressed those general concerns, finding that the purposes of Sections 191 and 198 are to protect employees who are "dependent upon their wages for sustenance" and deter labor law violations. *Vega*, 175 A.D.3d at 1146 (citation omitted). And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even where the administrator declines. *Id.* at 1147.

Finally, defendants argue that implying a private right of action for untimely but fully paid wages should be avoided because it would provide a cause of action to individuals who lack Article III standing. Defs.' Mem. at 16-18. Defendants rely on the Article III limitation of the federal judicial power to cases or controversies where the plaintiff has "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Defendants suggest that an employee who has been paid all her wages but paid late would lack standing under Article III because she could only "allege a bare procedural violation, divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

That argument fails to persuade. Sections 191 and 198 are state enactments, not federal ones. Defendants point to no authority for the proposition that state causes of action should be construed narrowly to ensure that federal courts can adjudicate them. *Cf.* Michael T. Morley, Spokeo*: The Quasi-Hohfeldian Plaintiff and the Nonfederal Federal Question*, 25 Geo. Mason

7

L. Rev. 583, 585 (2018) (arguing that *federal* statutes should be construed to impliedly incorporate Article III justiciability restrictions, when applied in state court). And in any event, the late payment of wages is a concrete harm. "[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019); *cf. Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) ("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money."). That injury is especially acute for those workers "who are generally dependent upon their wages for sustenance," *Vega*, 175 A.D.3d at 1146 (internal quotation marks and citation omitted). And plaintiffs do not seek a "statutory penalty," as defendants suggest, Defs.' Mem. at 17, but rather compensation for their injuries. The NYLL liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (internal quotation marks and citation omitted).

Because defendants offer no "persuasive evidence that the state's highest court would reach a different conclusion" than the First Department did in *Vega*, I am "bound to apply the law as interpreted by" the intermediate appellate court. *Muhammad*, 595 F.3d at 432. Following *Vega*, Section 191 provides a private right of action to enforce the late payment of full wages. The motion to dismiss plaintiff's Section 191 claim is denied.

II. **Plaintiff has not stated a claim for improper wage statements under Section 195(3) of the New York Labor Law.**

Defendants' motion to dismiss plaintiff's claim for improper wage statements under Section 195(3) of the New York Labor Law is granted. That provision requires an employer to "furnish each employee with a statement with every payment of wages." N.Y. Lab. L. § 195(3). The statement must include "the dates of work covered by that payment of wages"; the "name of

8

[the] employee"; the name, address, and phone number of the employer; the "rate or rates of pay and basis thereof"; gross wages; deductions; any allowances; and net wages. *Ibid.* For employees who are "not exempt from overtime compensation," the statement must also include "the regular hourly rate or rates of pay"; "the overtime rate or rates of pay"; "the number of regular hours worked, and the number of overtime hours worked." *Ibid.* The wage statement plaintiff attaches as an exhibit to his complaint includes each piece of information required under Section 195(3). *See* Compl. Ex. A.

Plaintiff nevertheless alleges that defendants violated Section 195(3) because they "failed to provide [Ms.] Caul with wage statements specifying the number of hours she worked per week." Compl. ¶ 42. But the plain language of the statute does not require wage statements to tally the hours worked per week. While Section 195(3) requires an employer to specify the hourly rate of pay, "dates of work covered by [a] payment of wages," and the number of regular and overtime hours worked, N.Y. Lab. L. § 195(3), it "does not require that wage statements be furnished on a weekly basis or provide a breakdown of how many hours an employee works 'per week.'" *Mabe*, 2021 WL 1062566, at *7. Plaintiff argues that Section 195(3) requires wage statements to inform workers of their rights to weekly wages. *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss at 18 (Dkt. #18). At most, plaintiff's authorities stand for the proposition that *inaccurate* calculations of hours and wages violate Section 195(3). *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015); *cf. Hicks v. T.L. Cannon Mgmt. Corp.*, No. 13-CV-06455 EAW, 2018 WL 2440732, at *5 (W.D.N.Y. Mar. 13, 2018). As a result, plaintiff's claim under Section 195(3) is dismissed. *See, e.g., Mabe*, 2021 WL 1062566, at *7 (dismissing similar claim); *Rojas v. Hi-Tech Metals, Inc.*, No. 702847/2019, 2019 WL 4570161, at *4 (N.Y. Sup. Ct. Sept. 11, 2019) (same); *Hunter*, 2018 WL 3392476, at *4 (same).

9

## CONCLUSION

Defendants' motion to dismiss plaintiff's claim under New York Labor Law §§ 191 and 198(1-a) is denied. Defendants' motion to dismiss plaintiff's claim under New York Labor Law § 195(3) is granted.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 27, 2021
       Brooklyn, New York